**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| YVONNE DELOACH,          )<br>                                        )<br>            Plaintiff,            )<br>                                        )     No. 9:22-cv-01449-DCN<br>      vs.                           )<br>                                        )     **ORDER**<br>EK REAL ESTATE SERVICES OF NY, LLC;  )<br>EASYKNOCK, INC.; and LENDINGONE,  )<br>LLC,                                   )<br>                                        )<br>            Defendants.      )<br>_____) | |

  This matter is before the court on plaintiff Yvonne Deloach's ("Deloach") motion for voluntary dismissal without prejudice, ECF No. 30. Also pending is defendants EK Real Estate Services of NY, LLC ("EK Real Estate") and EasyKnock, Inc.'s ("EasyKnock") (together, the "EasyKnock defendants") motion to dismiss, stay, and compel arbitration, ECF No. 12. For the reasons set forth below, the court grants Deloach's motion for voluntary dismissal without prejudice. Based on that ruling, the court finds that the EasyKnock defendants' motion is mooted.

## I.  BACKGROUND

  On June 23, 2016, Deloach received a deed of distribution to her family home located at 1919 Duke Street, Beaufort, South Carolina (the "Property"). In 2019, Deloach began seeking financial assistance to help pay taxes and expenses related to the Property. After conducting an internet search, Deloach came across EasyKnock, a real estate buyer that engages customers in what are known as sale-leaseback transactions. Typically, under such a transaction, a customer sells his or her home to EasyKnock, continues staying in the house as a renter, and has the option to either purchase the house

1

back at an agreed upon price or to direct EasyKnock to resell the house on the open market.

Deloach alleges that due to EasyKnock's predatory lending practices, Deloach was enticed into selling the Property to EasyKnock. As part of the transaction, the parties executed several different agreements. First, on August 9, 2019, Deloach and EK Real Estate[1] executed a Residential Real Estate Sales Agreement (the "Sales Agreement"). ECF No. 1-2. Following an appraisal of the Property, the parties executed an addendum to the Sales Agreement on August 23, 2019, establishing the purchase price of the Property as $140,000. ECF No. 1-3. The parties closed on August 29, 2019. At closing, the parties executed several more documents, including a Department of Housing and Urban Development Settlement Statement (HUD-1) that summarized the transaction, ECF No. 1-6; a Warranty Deed to the Property, ECF No. 1-5; and a Lease Agreement, ECF No. 1-9. Relevant to the pending motions, the Lease Agreement contains an arbitration section that provides, in part:

> **21. ARBITRATION**
>
> a) **Arbitration Requirement:** Except as provided below OR UNLESS TENANT SUBMITS A VALID ARBITRATION/CLASS ACTION WAIVER OPT-OUT NOTICE (AS DESCRIBED BELOW), any and all claims (each, a "Claim") between Tenant and Landlord will be resolved in binding arbitration rather than in court. Tenant and Landlord agree to submit to individual arbitration the resolution of any and all claims[] by or between Tenant and Landlord . . . . Any arbitration will be administered by the American Arbitration Association ("AAA") pursuant to its then current Commercial Arbitration Rules (the "AAA Rules"), as modified by the terms set forth in this section 21.
>
> b) **Arbitration Procedure:** Any arbitration initiated by Tenant or Landlord shall be initiated in New York, New York. The AAA Rules, and other

---

[1] EK Real Estate is a subsidiary of EasyKnock, Inc. See, e.g., ECF No. 1-9.

2

> information about the AAA, are available at the AAA's website at www.adr.org.
>
> . . .
>
> c) **Opt-Out:** Arbitration is not a mandatory condition of your contractual relationship with Landlord.  If Tenant does not want to be subject to the arbitration provision set forth in this section 21, Tenant may opt out of the arbitration provisions by notifying Landlord, in writing, of Tenant's intent to opt out of the arbitration provision, either by (a) sending, within thirty (30) days of the date of this Agreement, electronic mail to [EasyKnock] . . . or (b) by sending a letter by certified U.S. Mail . . . or by hand delivery to Landlord's address . . . .

ECF No. 1-9 at 16–17.  None of the other documents that were part of the transaction contained an arbitration provision.

According to Deloach, while she was hospitalized in the early part of 2022, EasyKnock contacted her and threatened legal action unless she agreed to list the Property for sale.  On March 29, 2022, Deloach filed a lis pendens and a complaint against the EasyKnock defendants and defendant Lendingone, LLC[2] (collectively, "defendants") in the Beaufort County Court of Common Pleas, (1) seeking a rescission of the deed and a declaratory judgment on various issues related to the transaction, and (2) alleging fraud, violation of South Carolina Unfair Trade Practices Act, civil conspiracy, aiding and abetting, and violation of the South Carolina Consumer Protection Code.  ECF No. 1-1.  On May 5, 2022, the EasyKnock defendants removed the action to this court pursuant to 28 U.S.C. § 1332.  ECF No. 1.  On May 23, 2022, Deloach filed an amended complaint, now the operative complaint, adding claims for violation of the Truth in Lending Act, slander of title, and unjust enrichment.  ECF No. 10, Amend. Compl.

---

[2] The complaint alleges that Lendingone facilitated and enabled the EasyKnock defendants' scheme by providing funding for their loan transactions.  ECF No. 1-1, Compl. ¶ 28.  Lendingone is represented by separate counsel and did not file responses to either of the pending motions.

On June 6, 2022, the EasyKnock defendants filed their motion to dismiss, stay, and compel arbitration. ECF No. 12. Deloach responded to the motion on July 11, 2022, ECF No. 20, and the EasyKnock defendants replied on July 18, 2022, ECF No. 21. On July 22, 2022, the court requested supplemental briefing from the parties on the legal significance of the forum-selection clause in the arbitration section. Both the EasyKnock defendants and Deloach filed timely supplemental briefs on August 8, 2022. ECF Nos. 26, 27. On August 11, 2022, the court held a hearing on the motion to dismiss, stay, and compel arbitration. ECF No. 28.

On September 21, 2022, Deloach filed a motion for voluntary dismissal without prejudice. ECF No. 30. The EasyKnock defendants responded in opposition to the motion on October 4, 2022, ECF No. 31, and Deloach replied on October 11, 2022. As such, both motions have been fully briefed and are now ripe for review.

## II.   DISCUSSION

There are two motions currently pending before the court. Because granting Deloach's motion for voluntary dismissal would effectively moot the EasyKnock defendants' motion, the court considers Deloach's motion first. Ultimately, the court grants Deloach's motion for voluntary dismissal. In doing so, the court finds the EasyKnock defendants' motion to dismiss, stay, and compel arbitration to be moot.

Deloach moves to voluntarily dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 41. Pursuant to Rule 41(a)(1), a plaintiff may not voluntarily dismiss his or her action without a court order after service of an answer or motion for summary judgment, unless a stipulation of dismissal is signed by all parties. Rule 41(a)(2) provides that "[e]xcept as provided in Rule 41(a)(1), an action may be

4

dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

The purpose of Rule 41(a)(2) is to freely allow voluntary dismissals unless the parties will be unfairly prejudiced. Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987); McCants v. Ford Motor Co., 781 F.2d 855, 856 (11th Cir. 1986); Alamance Indus. Inc. v. Filene's, 291 F.2d 142, 146 (1st Cir. 1961), cert. denied, 368 U.S. 831 (1961). As a general rule, a plaintiff's motion for voluntary dismissal without prejudice under Rule 41(a)(2) should not be denied absent plain legal prejudice to the defendant. See Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997); Phillips v. Ill. Cent. Gulf R.R., 874 F.2d 984, 986 (5th Cir. 1989); Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). A district court should consider the following factors in ruling on such motions: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation. See Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996); Grover by Grover v. Eli Lilly & Co., 33 F.3d 716, 718 (6th Cir. 1994); Paulucci v. City of Duluth, 826 F.2d 780, 783 (8th Cir. 1987). These factors are not exclusive, however, and any other relevant factors should be considered by the district court depending on the circumstances of the case. See Ohlander, 114 F.3d at 1537.

Rule 41(a)(2) permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from voluntary dismissal. A claim may be dismissed with prejudice under Rule 41(a)(2) if the court considers it to be a proper term of dismissal and states it in the order of dismissal.

See Fed. R. Civ. P. 41(a)(2) (stating that dismissal may be granted "on terms that the court considers proper" and that "unless the order states otherwise," dismissal is without prejudice). In addition, a plaintiff must have notice that dismissal with prejudice is a possibility and have an opportunity to respond to a defendant's arguments for dismissal with prejudice. See Andes, 788 F.2d at 1037.

The EasyKnock defendants contend that each of the four factors weigh in favor of denying Deloach's motion for voluntary dismissal. Again, when determining whether a party has suffered plain legal prejudice such that Rule 41(a)(2) dismissal is warranted, district courts consider factors including "the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation." Miller v. Terramite Corp., 114 F. App'x 536, 539 (4th Cir. 2004) (internal quotation marks and citation omitted). The court considers each factor in turn, finding that the EasyKnock defendants would not be unfairly prejudiced by the dismissal.

### A. The EasyKnock Defendants' Effort and Expenses

Under the first factor, the EasyKnock defendants argue that they have expended significant resources in this case in removing the matter to this court, drafting briefs related to the pending motions, and appearing for a hearing. They further argue that if Deloach is permitted to dismiss her claims without prejudice, "she could bring those claims again in another forum" and force the EasyKnock defendants "to go through the same process to resolve whether the claims are arbitrable." ECF No. 31 at 3. As a preliminary matter, the Fourth Circuit has explained that "for purposes of Rule 41(a)(2), prejudice to the defendant does not result from the prospect of a second lawsuit." Davis,

6

819 F.2d at 1274–75 (citations omitted). "Moreover, the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation will not serve to bar a second suit." Id. Thus, the concern that Deloach could ultimately re-file her claims, causing the EasyKnock defendants to relitigate the same matters, does not warrant denial of the motion.

Although the EasyKnock defendants assert that they have spent significant effort, the case is still in its relative infancy. As the EasyKnock defendants acknowledge, Deloach's motion for voluntary dismissal was filed approximately six months after she first filed her complaint. ECF No. 31 at 6. The parties have not conducted discovery. While the court does not doubt that counsel for EasyKnock spent significant time and resources to prepare its motion to compel arbitration, courts have granted motions for voluntary dismissal in cases where litigation costs were even steeper. See, e.g., Wellin v. Wellin, 2014 WL 234216, at *11 (D.S.C. Jan. 22, 2014) (finding that the first factor weighed in favor of dismissal even where the defendant's counsel had "incurred almost $200,000 in litigation costs"). The court finds that this first factor weighs in favor of voluntary dismissal.

### B. Excessive Delay and Lack of Diligence

Second, Deloach has neither excessively delayed this case nor displayed a lack of diligence. Under this factor, the EasyKnock defendants point out that if Deloach wished to avoid a judicial determination of whether her claims are arbitrable, she could have brought her motion for voluntary dismissal as soon the EasyKnock defendants brought its motion to compel arbitration. The EasyKnock defendants contend that instead, Deloach waited until the "last possible minute." ECF No. 31 at 4.

The EasyKnock defendants refer to a series of correspondences that occurred after the court held the hearing on the motion to compel arbitration. Leading up to the hearing, the issue surfaced as to whether venue was proper based on the forum selection clause in the Lease Agreement's arbitration clause. The court identified relevant legal authority stating that it could—without deciding if it had the capacity to order arbitral proceedings in another venue—allow arbitration to proceed in South Carolina if and only if the parties mutually agreed to it. See Mitchell v. Craftworks Rests. & Breweries, Inc., 2018 WL 5297815, at *11–12 (D.D.C. Oct. 25, 2018) (finding that "[b]efore resorting to transfer," the court could enter a stay pursuant to § 3 of the Federal Arbitration Act if the parties mutually agreed to the District of Columbia as an alternative forum). Based on that case, the court asked at the hearing if Deloach would consent to arbitrating in South Carolina, assuming the court ultimately determined that the arbitration agreement validly applied. Counsel for Deloach indicated that without Deloach present, she would need to confer with Deloach before providing the court with an answer. The court stated that Deloach could have until mid-September to determine if she would be amenable to arbitration in South Carolina, and the court would withhold its ruling on the motion to compel arbitration until then.

On September 9, 2022, the court, via its law clerk, emailed counsel for Deloach asking if counsel had an opportunity to confer with Deloach. ECF No. 31-1 at 3–4. Counsel for Deloach responded that Deloach had undergone surgery following the hearing and requested that the court extend the deadline to hear from Deloach to September 21, 2022. Id. at 3. The court agreed to extend the deadline. Id. at 2. On September 21, 2022, counsel for Deloach emailed to notify the court that because "no

resolution could be reached," Deloach had decided to file the instant motion for voluntary dismissal. Id.

The court agrees that Deloach could have voluntarily dismissed the case sooner instead of waiting until the last day of the court's deadline—a deadline that was meant to benefit Deloach by allowing her additional input before the court ruled on the EasyKnock defendants' motion. At the same time, there is no indication that Deloach's delay was motivated by ill purpose either. As it stands, Deloach could have simply been assessing her options up to the September 21 deadline before deciding that the prospect of arbitration was untenable. Indeed, counsel for Deloach represented to the court that Deloach was ill, and counsel was encountering difficulty in reaching her, further explaining the delay. In sum, the court finds that to the extent that there was any delay, such delay was not excessive and was not the result of a lack of diligence.

### C. Insufficient Explanation of the Need for Voluntary Dismissal

Under the third factor, the EasyKnock defendants argue that Deloach is plainly seeking to voluntarily dismiss this case to avoid an imminent adverse ruling, and such a reason is insufficient to permit voluntary dismissal. See also In re Columbia Leasing, L.L.C., 2014 WL 670819, at *5 (E.D. Va. Feb. 20, 2014) ("[A] 'motion for a voluntary dismissal should generally be denied when the purpose is to avoid an adverse determination on the merits of the action.'") (quoting 8 Moore's Federal Practice § 41.40 (Matthew Bender 3d ed.)). Deloach responds that she articulated her reason for voluntarily dismissing the case in her declaration filed along with her response to the EasyKnock defendants' motion to compel arbitration. ECF No. 32 at 3 (citing ECF No. 20-1, Deloach Decl. ¶¶ 23–24). In the declaration, Deloach stated that she does not have

9

the financial ability to pay the filing fees required for arbitration or to pay the costs that would be required to litigate her claims in New York. Deloach Decl. ¶¶ 23–24. As such, Deloach appears to be seeking voluntarily dismissal of the case due to the potential burdens that she may face from arbitration, litigation in New York, or both. The court finds that this reason for dismissal is different from an attempt by Deloach to avoid an adverse ruling. See Mallory v. Rush Univ. Med. Ctr., 2020 WL 6559155, at *5 (N.D. Ill. Nov. 9, 2020) ("An inability to continue litigation due to financial constraints can be a legitimate consideration for dismissing a case without prejudice.") (citations omitted); cf. Patterson v. W. Carolina Univ., 2013 WL 4053142, at *2 (W.D.N.C. Aug. 12, 2013) (finding that the plaintiff provided a sufficient reason for seeking voluntary dismissal after the plaintiff explained that he was not physically in a condition that allowed him to attend and participate in trial).

       To be sure, Deloach's argument appears to run contrary to another point she raises in her brief. Deloach later argues that she "has every confidence arbitration ultimately will not be compelled." ECF No. 32 at 3. This seemingly contradicts Deloach's assertion that her motion for voluntarily dismissal is at least partially motivated by the concern that she would not be able to afford costs related to arbitration. Nevertheless, the court accepts that Deloach can simultaneously believe that she would have succeeded in proving the unenforceability of the arbitration clause and harbor concern for the costs that she might incur before a court reaches that determination. In other words, even if Deloach maintains that the case would not proceed to arbitration, it is not unreasonable for her to argue that she wished to avoid the risk of incurring costs because her appetite for such costs had diminished.

In their response to the motion, the EasyKnock defendants contend that Deloach's request suggests that she will refile her case in another forum. Certainly, forum shopping is not a permitted reason for seeking voluntarily dismissal of a case. Columbia Leasing, 2014 WL 670819, at *5 ("[C]laimants should not be allowed 'select a forum in which to prosecute [their] claims, then be allowed to bail out scot-free to try the same claims in another forum after . . . seeing the adverse handwriting on the wall in the first chosen forum.'") (quoting Davis, 819 F.2d at 1273 (Phillips, J., dissenting)). But there is no strong indication that Deloach intends to file her claims in another federal court. Even if that were the case, the court finds that the EasyKnock defendants would suffer limited prejudice from having to defend the claims in another forum. As the court discusses below, it is very likely that the EasyKnock defendants would have faced the prospect of litigating in another forum anyway as this court was weighing the transfer of this case to the Southern District of New York. In sum, the court finds that this factor weighs in favor of dismissal.

### D.  Present Stage of Litigation

The "present stage of the litigation" factor looks to whether "discovery is nearly complete and dispositive motions are imminent." Covington v. Syngenta Corp., 225 F. Supp. 3d 384, 391 (D.S.C. 2016). Courts typically deny motions for voluntary dismissal on this basis when the case has advanced to the summary judgment stage. That pattern reflects courts' concern with the prejudice that results when the parties have already incurred substantial costs for discovery. See, e.g., Howard v. Inova Health Care Servs., 302 F. App'x 166, 179–80 (4th Cir. 2008) (collecting cases affirming district court denials of motions for voluntary dismissal that were filed after the discovery period);

11

Seligman v. Tenzer, 173 F. App'x 280, 283 (4th Cir. 2006) (affirming the trial court's denial of voluntary dismissal where the plaintiff filed the motion "after the close of discovery, after defendants had already filed their motion for summary judgment, and within three weeks of the scheduled trial date"); Miller, 114 F. App'x at 540 (affirming the district court's finding that the plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was filed "well after discovery had closed" and a dispositive order was imminent).  As noted above, this case is still in its preliminary stages.  The parties have not taken discovery and no scheduling order has been entered.

Recognizing that "[t]his case is admittedly in an early stage," the EasyKnock defendants argue that the fourth factor nonetheless weighs in their favor because the motion to compel arbitration essentially functions as a dispositive motion.  ECF No. 31 at 3.  In support, they contend that at least one other court denied a Rule 41(a)(2) motion based on a motion to compel arbitration.  Id. at 6 (citing Walker v. Queens Gap Mountain, LLC, 2013 WL 5492519, at *6 (W.D.N.C. Oct. 1, 2013)).  But Walker is distinguishable.  There, the district court found that the timing factor "heavily favor[ed] denial" of a motion for voluntary dismissal that was brought after the court had issued an order compelling arbitration.  Walker, 2013 WL 5492519, at *5.  Thus, unlike in this case, the court in Walker had already issued an order compelling arbitration.  Accordingly, the denial of the motion to dismiss was further necessitated by the risk that the plaintiffs were "seeking a dismissal to circumvent an expected adverse result from an arbitrator."  Id.  Here, the EasyKnock defendants' motion to compel arbitration is still pending.  The EasyKnock defendants strongly imply that Deloach filed her motion to

avoid an imminent ruling from this court that would have compelled arbitration. Critically, however, the court has not ruled yet on that motion, so unlike in Walker, Deloach was not facing the prospect of an adverse result from an arbitrator when she moved for dismissal.

If anything, the court's decision to request supplemental briefs on the interplay between the forum-selection clause and § 4 of the Federal Arbitration Act ("FAA") signaled that it was contemplating transferring the action.[3]  The court also asked Deloach

---

[3] The arbitration section at issue in this case contains a clause directing arbitration to New York, New York.  Section 4 of the FAA provides that "[t]he hearing and proceedings, under [an arbitration] agreement, shall be within the district in which the petition for an order directing such arbitration is filed."  9 U.S.C. § 4.  Section 4 further dictates that if the court determines that arbitration should occur, the court must "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  Id.  "Those two mandates, read together, 'can create a perplexing dilemma'" in which arbitral proceedings may either occur outside of the district in which the motion for arbitration was filed or occur some place other than where the parties agreed to arbitrate.  Sunbelt Residential Acquisitions, LLC v. Crowne Lake Assocs., Ltd. P'ship, 2021 WL 512228, at *7 (M.D.N.C. Feb. 11, 2021), report and recommendation adopted, 2021 WL 7186398 (W.D.N.C. Mar. 2, 2021).  That exact dilemma was presented here: the EasyKnock defendants filed a motion requesting an order to arbitrate in the District of South Carolina, but the terms of the arbitration agreement specifically provide that "[a]ny arbitration initiated by Tenant or Landlord shall be initiated in New York, New York."  ECF No. 1-9 at 16.  The majority of courts resolve the dilemma by finding that "where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has the authority to compel arbitration under § 4 of the FAA."  Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., Inc., 628 F. Supp. 2d 674, 683 (E.D. Va. 2009) (collecting cases); see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995) ("[W]here the arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration.  Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless.").  This court has adopted the same approach before.  See Kiawah Island Utility, Inc. v. Westport Ins. Corp., 2019 WL 5394200, at *4 (D.S.C. Oct. 22, 2019) (finding that because "the petition must be brought in the arbitration forum to comport with § 4," the court was required to transfer the case to the Southern District of New York); Brumfield v. Kindred Healthcare Inc., 2018 WL 3222614, at *3 (D.S.C. July 2, 2018) ("Because plaintiffs are bound to arbitrate in different states and this court cannot compel them to arbitration, the court transfers their cases to their respective districts to enable those courts to compel them to arbitration.").

whether she would be amenable to arbitration in South Carolina, signaling that it would likely transfer the case barring an answer on the matter.  See ECF No. 31-1 at 1.  To that end, there is some risk that Deloach filed her motion to voluntarily dismiss solely to avoid the transfer.  Nevertheless, that decision would not have disposed of Deloach's claims—it would have simply transferred them to a different tribunal.  Since there is no pending motion for summary judgment or prospect of an analogous resolution by an arbiter, the court ultimately finds that this factor weighs against the EasyKnock defendants.  In sum, after considering the four factors, including the prejudice that defendants may incur, the court grants Deloach's motion for voluntary dismissal without prejudice.

### III.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Deloach's motion for voluntary dismissal without prejudice.  The court **FINDS AS MOOT** the EasyKnock defendants' motion to dismiss, stay, and compel arbitration.

---

By applying that approach, the court would have been required to transfer the case to the Southern District of New York, which, under this approach, is the only forum capable of compelling arbitration under the FAA.  Although the court does not reach the merits of the EasyKnock defendants' motion, the court cautions Deloach that transferal to the Southern District of New York to decide the issue of arbitrability is the most likely recourse in the event Deloach refiles her claims in this district court.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**December 13, 2022
Charleston, South Carolina**